1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BOARD OF TRUSTEES OF THE
CONSTRUCTION INDUSTRY AND
LABORERS HEALTH AND WELFARE
TRUST, et al.,

       Plaintiffs

v.

WILDHORSE INVESTMENTS, INC., et al.,

       Defendants

Case No.: 2:23-cv-01122-APG-MDC

**Order Denying Wildhorse's Motion for
Summary Judgment and Granting the
Trustees' Motion for Summary Judgment**

[ECF Nos. 58, 64]

10

11

12

13

14

15

      The boards of trustees for four union benefits trust funds (collectively, the Trustees)[1]
sued Wildhorse Investments, Inc. (doing business as Black Canyon Construction) for failing to
pay benefits contributions for employees who worked on a Nevada Department of Transportation
(NDOT) project.  The Trustees later added Western National Mutual Insurance Company as a
defendant because it holds a surety bond for Black Canyon.  Because Black Canyon and Western
raise the same arguments, I will refer to them collectively as Black Canyon.

16

17

18

19

20

21

      Black Canyon moves to dismiss or for summary judgment arguing that its favorable
arbitration award against Laborers Local 872 Union (the Union) precludes the Trustees' suit.
The Trustees oppose because they were not parties to the arbitration and cannot be in privity with
the Union as a matter of law.  The Trustees also move for summary judgment arguing that the

22

23

---

[1] The four plaintiff boards are The Board of Trustees of the Construction Industry and Laborers
Health and Welfare Trust, The Board of Trustees of the Construction Industry and Laborers Joint
Pension Trust, The Board of Trustees of the Construction Industry and Laborers Vacation Trust,
and The Board of Trustees of the Southern Nevada Laborers Local 872 Training Trust.

plain language of the relevant labor contract entitles them to judgment as a matter of law.  For

the reasons below, I deny Wildhorse's motion and grant summary judgment to the Trustees.

**I.  BACKGROUND**

**A.  NDOT Project Labor Agreement**

NDOT hired nonparty Granite Construction to lead Project 3905, an overhaul of an

interchange on Interstate 515, and required Granite Construction to subcontract portions of the

work to minority-owned Disadvantaged Business Enterprises (DBEs). ECF No. 58-1 at 2, 202.

Granite hired Black Canyon, a certified DBE, to do landscaping and irrigation work on the

project. *Id.* at 144; ECF No. 64-12.  Black Canyon agreed to be bound by NDOT's Project Labor

Agreement (PLA) for Project 3905. ECF No. 58-1 at 29.

Under the PLA, contractors "of whatever tier" were required to pay contributions to the

established employee benefits funds according to the appropriate union's Master Labor

Agreement (MLA). ECF No. 64-6 at 20-21.  Article IV, Section 6(d) of the PLA allows the

following exception: "Provided there is language in the applicable Union's Master Labor

Agreement, permitting the provisions of this subsection," when a general contractor is required

to satisfy a DBE requirement and hires a non-union DBE, then the DBE "shall not be obligated

to pay fringe benefit contributions on behalf of its non-union employees." *Id.* at 11-12.  The only

language in the Laborers Local 872 Union MLA about DBEs pertains to public works projects

and states, "Maintain DBE language and the use of a PLA for certified companies based on

owner and project requirements." ECF No. 64-10 at 33.

An NDOT compliance officer informed Black Canyon that as a non-union DBE, it

needed to pay only prevailing wage rates, rather than wages and benefit contributions. ECF No.

64-8 at 17, 34-35.  Black Canyon paid its workers the value of the benefits as wages instead of contributing to the Union trust funds. *Id.* at 26; ECF No. 68 at 14.

### B.  Union Arbitration

The Union filed a grievance against Black Canyon for failing to pay trust fund contributions, which proceeded to arbitration under the PLA.[2]  At the arbitration hearing, Black Canyon and the Union stipulated that Article IV, Section 6 of the PLA applied to Black Canyon. ECF No. 64-8 at 15-16.  Following this stipulation, the Arbitrator focused on whether Black Canyon complied with Article IV, Section 6(d), specifically whether Black Canyon's employees were exempt as "non-union employees." ECF No. 64-18 at 19-24.  Finding that the employees were "non-union" for this project, the Arbitrator ruled that Black Canyon did not owe any contributions to the trust funds. *Id.* at 26.

## II.  ANALYSIS

Because both parties present "matters outside the pleading" for me to consider, I treat Black Canyon's motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Thus, the parties each move for summary judgment.

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[2] Although the Trustees argued that they would not be bound by the arbitration outcome, I stayed this case for 60 days pending the Arbitrator's decision. ECF Nos. 15; 27 at 12-14.

1    The party seeking summary judgment bears the initial burden of informing the court of

2  the basis for its motion and identifying those portions of the record that demonstrate the absence

3  of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

4  burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

5  genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

6  Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

7  genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and

8  reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of

9  Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). Interpreting the terms of a contract and their legal

10  effect are questions of law properly determined on summary judgment. *Local Motion, Inc. v.

11  Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997).

12    **A. Black Canyon's motion for summary judgment**

13    Black Canyon argues that the Trustees' suit is barred by res judicata based on the

14  Arbitrator's award in its favor. The Trustees respond that they are separate from the Union, were

15  not parties to the arbitration, and are not privies of the Union.

16    Res judicata collectively defines claim and issue preclusion, replacing earlier terms such

17  as collateral estoppel. *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008). Because this claim arises

18  under the Employee Retirement Income Security Act (ERISA), it implicates a federal question;

19  therefore federal common law determines the preclusive effect of a prior judgment. *Id.* at 891.

20  "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the

21  very same claim, whether or not relitigation of the claim raises the same issues as the earlier

22  suit." *Id.* at 892 (quotation omitted). "Claim preclusion applies when there is (1) an identity of

23  claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Garity*

*v. AQWU Nat'l Lab. Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quotation omitted).  The Trustees do not contest the first two elements, so the issue is whether there is identity or privity between the Union and the trust funds. ECF No. 60 at 16.

"As a matter of federal law, a union and its representatives are not agents of a trust fund created by a collective bargaining agreement.  Trust authorities . . . have long been held to constitute a distinct and independent entity separate from the union." *Waggoner v. Dallaire*, 649 F.2d 1362, 1368 (9th Cir. 1981) (citing *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 465-71 (1960)).  The Supreme Court of the United States has held that multiemployer trusts need not adhere to arbitration requirements in collective bargaining agreements prior to seeking judicial enforcement of trust provisions. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 372, 376 (1984).  And trustees need not depend on unions to enforce their rights through the grievance and arbitration system because "ERISA places strict duties on trustees with respect to the interests of beneficiaries, and unions' duties toward beneficiaries are of a quite different scope." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 575-76 (1985).

Relying on *Central States* and *Schneider*, the Third Circuit held that trustees were not precluded from relitigating whether a valid collective bargaining agreement existed after arbitration on that issue between an employer and a union. *Moldovan v. Great Atl. & Pac. Tea Co. Inc.*, 790 F.2d 894, 897-99 (3d Cir. 1986).[3]  The fact that most trusts represent multiple

---

[3] Black Canyon asserts that *Moldovan* was overruled in *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 545-46 (1988).  Black Canyon is incorrect. *Advanced Lightweight Concrete* affirmed a Ninth Circuit case that agreed with *Moldovan*'s separate holding that trustees may not use ERISA to bring unfair labor practice claims in federal court for employers who fail to make post-contract contributions to trust funds. 484 U.S. at 545 n.7; *Moldovan*, 790 F.2d at 900-01.  *Advanced Lightweight Concrete* did not address claim preclusion.

employers or retired beneficiaries creates a conflict of interest "so fundamental that as a matter of due process the union representing employees in that unit cannot ever be deemed the representative of the fund." *Id.* at 899.  Similarly in *American Federation of Television and Radio Artists Health and Retirement Funds v. WCCO Television, Inc.*, a union winning a partial arbitration award requiring the employer to pay prospective, but not retroactive, contributions did not preclude the trust fund from seeking the retroactive contributions in federal court. 934 F.2d 987, 988, 990-91 (8th Cir. 1991).  Based on *Central States*, *Schneider*, and *Moldovan*, the Eighth Circuit agreed that "the trustees are not in privity with the Union as a matter of law even though the trustees and the Union had a common interest." *Id.* at 990.

Although the Ninth Circuit has not directly addressed claim preclusion between a union and its benefits fund trustees, four circuits have declined to apply claim preclusion in similar circumstances. *See O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167 (2d Cir. 1984) (rejecting res judicata for a union's unfair labor practice charge brought before the National Labor Relations Board); *Bd. of Trustees, Container Mechs. Welfare/Pension Fund v. Universal Enters., Inc.*, 751 F.2d 1177, 1183 (11th Cir. 1985) (same for Administrative Law Judge's ruling); *Moldovan*, 790 F.2d at 899; *WCCO Television*, 934 F.2d at 990-91.  The only case Black Canyon cites in support of preclusion is *Fried v. Bevel Motors, Inc.*, 666 F. Supp. 28 (E.D.N.Y. 1987).  In that case, the court did not hold that privity existed as a matter of law but held that "the undisputed facts show that the [] trustees vested [the union] with authority to represent [the trust fund's] interest in the arbitration and that [the union] conducted the arbitration subject to the control" of the trustees. *Id.* at 29.

Here, the record does not show that the Trustees vested the Union with authority to represent it in the arbitration or that the Trustees controlled the Union during arbitration.  Black

Canyon argues that the Union's business manager, Tommy White, is also on the board of trustees and that both the Union and the Trustees were aware of each other's litigation efforts. Because White "[p]resumably" interacted with counsel for both entities, Black Canyon argues that the Union adequately represented the Trustees' interests. ECF No. 58 at 13-14.  These facts are insufficient to overcome the inherent conflict the Supreme Court has identified between the scope of duties for the Union and the Trustees. *See Central States*, 472 U.S. at 575-77; *Schneider*, 466 U.S. at 375-76.  Additionally, the Trustees opposed staying this case pending the Arbitrator's decision, and prior to the arbitration hearing the Trustees offered an alternative theory to the one the Union raised during the arbitration. *See* ECF Nos. 10 at 2; 58-1 at 123-24. The Trustees' interests, therefore, were not fully represented during the arbitration, and there are no facts showing that they controlled the Union during arbitration.  Claim preclusion does not bar the Trustees' ERISA claims, so I deny Black Canyon's motion for summary judgment.

### B.  The Trustees' motion for summary judgment

The Trustees argue that there is no dispute that Black Canyon did not pay contributions to the trust funds, so the only dispute is whether the PLA's terms required Black Canyon to do so. They assert that the predicate clause, "Provided there is language in the applicable Union's Master Labor Agreement, permitting the provisions of this subsection," is not satisfied because the Union's MLA contains no such language, so Black Canyon cannot be excused from paying benefit contributions. ECF No. 64 at 19-20.  Black Canyon responds that by "listing 'Maintain DBE language and the use of a PLA for certified companies based on owner and project requirements,' the MLA did provide language" relieving Black Canyon from paying benefit contributions. ECF No. 68 at 4 n.2.

ERISA requires employers to make contributions to a multiemployer plan when obligated to do so and allows fiduciaries of those funds to bring civil suits to enforce those obligations. 29 U.S.C. §§ 1132(a)(1); 1145. I "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (quotation omitted). A term is ambiguous "only if multiple reasonable interpretations exist." *Trs. Of S. Cal. IBEW-NECA Trust Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008). I interpret written terms "in the context of the entire agreement's language, structure, and stated purpose." *Id.*

Resolution of this dispute involves the interplay between language in the PLA, which is the contract NDOT used to hire contractors for this particular project, and the MLA, which is the agreement between the Laborers Local 872 Union and its signatory employers. The PLA requires signatories to pay benefit contributions unless (1) they qualify for the DBE exception and (2) there is language in the applicable Union's MLA permitting such exception. ECF No. 64-6 at 20-21, 11-12. The only reference to DBEs in the MLA is in Article XVIII covering public works. ECF No. 64-10 at 33. That provision states simply, "Maintain DBE language and the use of a PLA for certified companies based on owner and project requirements." *Id.* The Trustees argue that this provision is a record-keeping requirement for employers performing public works projects. ECF No. 64 at 20. Black Canyon disagrees that the provision applies to forms and records, and notes that the prior paragraph discusses participation in prevailing wage surveys, so the DBE reference provides relief from benefits contributions. ECF No. 68 at 4 n.2.

The disputed provision does not identify who is to "maintain DBE language and use of a PLA." When read in the context of the adjacent sections, however, it appears to direct signatory employers to use a PLA when required to hire DBEs for public works projects. The other paragraphs in the public works section provide direction to employers when they are taking on public works projects, such as direction regarding completing prevailing wage surveys, determining the applicable prevailing wage rate, and determining when employers may establish special shifts. Public works projects often require selected contractors to have a DBE program and obtain approval of that program. *See, e.g.*, 49 C.F.R. § 26.21. In that context, the disputed provision may be properly read as "[Employers working on public works projects must] maintain DBE language and the use of a PLA for certified companies [when required to hire DBEs] based on owner and project requirements."

NDOT and its general contractor, Granite Construction, complied with this provision by using a PLA to bring on DBEs, including Black Canyon, for Project 3905. The MLA does not say anything about whether DBEs may waive contributions to benefit trust funds. The first and fourth paragraphs of the MLA section on public works discuss prevailing wage rates and instruct employers to "include maintenance of benefits." ECF No. 64-10 at 33. Elsewhere in the MLA, the table of contributions to trust funds states that contributions will be made for "each employee under the terms of this agreement." *Id.* at 25. The default in both the MLA and PLA is that all employers pay benefits contributions. *Id.*; ECF No. 64-6 at 20-21.

If NDOT wished to exempt all non-union DBEs from paying into employee benefit trust funds, it could have done so in the PLA. NDOT chose to condition such exceptions, however, on there being "language in the applicable Union's Master Labor Agreement, permitting the provisions of this subsection." ECF No. 64-6 at 11. Because all parties agree the relevant MLA

9

is the Laborers Local 872 MLA, and that document does not have language permitting non-union DBEs to refrain from making benefit contributions, Black Canyon was obligated to pay those contributions and did not do so.  I therefore grant the Trustees' motion for summary judgment on its ERISA claims.

### C. Damages

Under 29 U.S.C. § 1132(g)(2), if I award judgment in an action brought by a fiduciary in favor of the plan, I must award the plan the unpaid contributions, interest, and an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent of the unpaid contributions.  "Section 1132(g)(2) is mandatory and not discretionary." *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quotation omitted).  To qualify for a mandatory award (1) Black Canyon must be delinquent at the time the Trustees filed this action; (2) I must enter a judgment against Black Canyon; and (3) the benefits plan must provide for such an award. *Id.*  I am granting summary judgment in favor of the Trustees and against Black Canyon, so I look to the relevant trust plans for damages.

The Trust Funds' Trust Agreements and Collection Policy provide that interest will run at 14% per annum. ECF Nos. 64-2 at 7; 64-3 at 7; 64-4 at 7; 64-5 at 7; 64-36 at 3.  The Trust Funds' Trust Agreements and Collection Policy set liquidated damages at 20% of the delinquent contribution amount, or equal to the total interest due, whichever is higher. ECF Nos. 64-2 at 36; 64-3 at 33; 64-4 at 32; 64-5 at 32; 64-36 at 3.  The Trust Collection Policy provides for the employer to pay audit fees. ECF No. 64-36 at 2-3.  The Trustees conducted an audit based on certified payroll information they received from NDOT. ECF Nos. 64 at 13; 64-28.  Based on that audit, the Trustees calculated that Black Canyon's delinquent amount was $99,859.23. ECF

No. 64-25 at 2.  The Trustees also claim audit fees of $2,386 as well as interest and liquidated damages, which have continued accruing.

Black Canyon disputes the damages because the Trustees claimed two higher amounts earlier in the litigation, the audit is not "authenticated," and there is no description of how the calculations were made. ECF No. 68 at 13.  Black Canyon does not provide an alternative amount it would owe in the event it is liable, even though it had access to the same payroll documents and Black Canyon's owner testified that the fringe benefits were reported as paid in cash on the certified payroll reports. ECF No. 64-8 at 35.  The Trustees explain that the two prior amounts in demand letters were based on estimates made before they obtained the payroll documents, that the audit represents the correct delinquent amount, and that it was performed by a third-party certified public accountant.

The Trustees have met their initial burden of pointing to facts in the record that show the damages amount.  The burden thus shifts to Black Canyon to set forth specific facts demonstrating a genuine dispute for trial. *See Sonner*, 911 F.3d at 992.  Black Canyon has not identified specific facts, and instead expresses "metaphysical doubt" about the accuracy of the Trustees' audit, which is not sufficient to overcome a motion for summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").  I therefore grant summary judgment in favor of the Trustees in the amount of $99,859.23 for the delinquent dues, $2,386

for the audit fees, $19,634.80 in interest,[4] and $19,634.80 in liquidated damages.  Total damages are $141,514.83.

**III.  CONCLUSION**

I THEREFORE ORDER that Defendants Wildhorse Investments, Inc. and Western National Mutual Insurance Co.'s motion for summary judgment **(ECF No. 58) is DENIED**.

I FURTHER ORDER that Plaintiffs Boards of Trustees' motion for summary judgment **(ECF No. 64) is GRANTED**.

I FURTHER ORDER the clerk of court to enter judgment in favor of the plaintiffs and against the defendants for damages in the amount of $141,514.83.

DATED this 27th day of December, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The interest calculated from the audit through July 31, 2023 was $6,697.17. ECF No. 64-25 at 3-4.  Fourteen percent of the delinquent amount of $99,859.23 is $13,980.29 annually, which apportioned over 365 days is $38.30 per day.  An additional 514 days have elapsed between August 1, 2023, and December 27, 2024, so the amount of interest is $19,634.80.  Liquidated damages are equal to the interest amount.